210 So.2d 585 (1968)
James G. BLANCHARD
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 3048.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
Rehearing Denied June 10, 1968.
*586 Alvin J. Liska, Joseph J. Gendusa, Jr., New Orleans, for New Orleans Police Department, appellee.
Joseph R. Bossetta, J. B. Kiefer, for James G. Blanchard, appellant.
Before REGAN, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
This is an appeal from a ruling of the Civil Service Commission denying James G. Blanchard of the New Orleans Police Department recovery of benefits alleged to be due him for injuries sustained in the performance of his duties, by virtue of the provision of Rule VIII, Sec. (2.1) (c) of the Civil Service Commission.[1]
The New Orleans Police Department, defendant and appellee, opposed the demands of James G. Blanchard, and urged that a strict application of the rule above referred to, and relied upon by plaintiff, particularly the phrase contained therein reading "injured directly in the performance of his duty for the protection of life and property" prohibits the granting of such relief as his injuries were not incurred while in "hot pursuit".
The appeal from the Civil Service Commission comes to us by virtue of Art. 14, § 15(O) (1) and Art. 7, § 10 and § 29 of the State Constitution as amended, which specifically provides that the decision of the appropriate Civil Service Commission be final as to the facts. This controversy as presented to this court contains no finding of fact, but poses the legal question concerning the application of Rule VIII(2.1) (c), and our decision will be limited, therefore, to the proper interpretation which should be given this rule.
The petition to the Civil Service Commission reveals an unusual set of circumstances which are briefly set out in its reasons for judgment as quoted below:
"The instant request of Patrolman James G. Blanchard arises out of his unfortunate exposure to and contraction of typhoid fever. Blanchard seeks to show the Commission that his severe illness was or, by a process of elimination, could only have been contracted during an investigation he conducted aboard a Chinese vessel in the Port of New Orleans on December 2, 1966. Blanchard contends that since he went aboard said vessel in the scope of his employment and in line of duty, which cannot be denied, he is entitled to sick leave under Rule VIII, Section (2.1) (c). His accumulated sick leave was quickly consumed during the course of his period of extreme illness, for which he was still under doctor's care when this matter was heard by the Commission on June 15, 1967. In fact, the prognois presented at the hearing indicated that Blanchard would continue to be disabled and unfit for a return to full time duty for at least another six (6) to nine (9) months. Meanwhile, he had gone heavily into debt and his wife's income as a school teacher was the sole support of Blanchard and his family."
After a full hearing the Civil Service Commission rendered a decision which states:
1. "Strictly as a matter of proof, and without herein reviewing in detail all of the medical and lay testimony, no witness, medical or lay, could definitely say where or when Patrolman Blanchard was exposed to and contracted the virus which resulted in his disabling disease. It must be left to pure speculation and the educated *587 guess of the City of New Orleans Health Director, Dr. Rodney C. Jung, that the most likely place Blanchard contracted the disease was on the Chinese vessel. A finding of fact by us cannot be made on this speculation.

2. "Pretermitting, however, a determination of where Blanchard contracted this dread disease, and, assuming, arguendo, that the carrier was aboard the Chinese vessel on which Blanchard spent some forty-five minutes during his December 2, 1966 investigation and during which time he drank from an automatic water cooler in the crew's quarters on the vessel and came in physical contact with members of the Chinese crew and shortly thereafter had a sandwich at a New Orleans restaurant without the benefit of washing beforehand, nonetheless Blanchard's presence on board the Chinese vessel cannot be reasonably stated to have occurred within the meaning and intent of the `hot pursuit' theory. His presence on said vessel was to return a crew member who had been robbed on one of the City streets earlier that evening and in connection therewith to conduct and complete an investigation. This was not what we understand to be fairly intended by the words `for the protection of life and property'. A strict construction of this phrase which we feel bound to apply, removes the instant situation from its control, and the illness suffered by Blanchard cannot qualify for relief thereunder." Emphasis supplied.
The Civil Service Commission's conclusion under (1) above is in effect no decision at all. The logical reading of its statement means simply that the Commission has declined to make a factual decision on the merits of the petitioner's application. Since we are denied a decision on the facts based on our independent review, we are bound to remand the cause to have such a factual determination made by the only agency allowed that decision. LSA-Const. Art. 14, § 15(O) (1).
Our review is limited to questions of law which we think are found in (2) above. Specifically our attention is focused on the sentence which requires the strict construction of the phrase "For the protection of life and property."
The Civil Service Commission has evidently given the basis for the police department's application of Rule VIII(2.1) (c) because Acting Superintendent Presley J. Trosclair, Jr. stated in his testimony that several commission decisions indicated this interpretation was to be applied. Their interpretation as found in the Ruling of the Commission is best defined as follows:
"The rationale of this subsection is to allow compensation to an employee of the police department when he has been `injured directly in the performance of his duty for the protection of life and property', sometimes referred to as the `hot pursuit' theory, on the grounds that when a policeman exposes himself to extraordinary danger and is injured, he should have, at least, the protection of continued income over and beyond any accumulated sick leave, which accumulated sick leave he should not be forced to use. This is in the nature of a reward for selfless exposure to danger encountered directly in the performance of duty for the protection of another's life or property. This reward is not intended to be and should not be construed as applicable to any and every injury or illness `arising out of or in the scope of employ' as that phrase is generally understood and used by the courts of this state in construing the Louisiana Workmen's Compensation Statutes. The above quoted phrase, `injured directly in the performance of his duty for the protection of life and property', has a much more restricted meaning and is intended to be strictly construed. Just which injury or illness falls within the intent of this above quoted phrase in the Commission's *588 rules may have to be determined by the Commission by a process of inclusion and exclusion in which each fact situation must stand on its own."
This "hot pursuit" theory has been further refined by officials of the police department to mean that the only activity which falls under this category is the actual pursuit following some attempted destruction of life or property. Illustrative of the attitude assumed by the police is Acting Superintendent Trosclair's response to a question regarding the classification of a policeman's injuries incurred while on duty. For example, if the policeman is injured on patrol, Acting Superintendent Trosclair defines the category for which he would be eligible as follows:
"Yes, sir, that is correct and, of course, we have refined it a little more. Just because a person is in a squad car, I'd like to explain, riding down the street while on duty, he is in the performance of duty, he is patrolling, he is preventing crime. If he gets hit in the side or back we carry him now sick. This is why he has sick timethe privilege of accumulating two days a month sick time."
Even if the policeman is in an investigative process rather than the "hot pursuit" of an alleged criminal when hurt, he is not allowed to be carried as "injured on duty". Acting Superintendent Trosclair gave the following hypothetical example:
"At this time, if he was routinely responding to an automobile accident, not on an emergency call or not on a robbery in progress but investigating or going to investigate a robbery which had already occurred, and if he was involved in an automobile accident, he would now be classed as sick."
The foregoing interpretation somehow originally derived from Rule VIII(2.1) (c) by the Civil Service Commission and further "refined" by the officials of the police department has no basis in law. A simple interpretation of the words used in the phrase "injured directly in the performance of his duty for the protection of life and property" does not warrant the illogical and strained construction given it by the Commission. A policeman is actually engaged in the performance of his duty for the protection of life and property whenever he is carrying out the official orders or requirements of his office. Whether he be patrolling, investigating, or directing traffic, the policeman is the very essence of and should stand as a symbol of the protector of life and property. The police are employed by the City of New Orleans to protect its citizens and they are sworn to pursue this duty unselfishly though the employment may prove extremely hazardous. Therefore, if a policeman is injured while actually engaged in the performance of his duty, and particularly if he would suffer some disciplinary reprimand if he did not carry out this duty, then this injury should fall under the definition of the Rule VIII(2.1) (c). The continued illogical interpretation of this rule could lead to the most absurd consequences which would eventually induce the policeman to avoid a dangerous situation; indeed discourage him from pursuing law enforcement as a career.
For the reasons herein assigned, we remand this case to the Civil Service Commission of the City of New Orleans for their decision on the factual question whether James G. Blanchard contracted typhoid fever while conducting an investigation on board a Chinese vessel in the Port of New Orleans. Upon reaching a decision to this factual question alone, the Civil Service Commission shall then complete the hearing in accordance with our decision as to the interpretation of Rule VIII(2.1) (c).
Remanded.
NOTES
[1] Rule VIII, Section (2.1) (c) reads as follows:

"(C) If an employee of the police department is injured directly in the performance of his duty for the protection of life and property, the employee shall be granted additional sick leave with pay, which shall not be charged against his ordinary sick leave accumulation, provided the leave is requested of the Commission each month and is accompanied by a certificate from a physician acceptable to the Commission."