WALTER BARBER, Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE VILLAGE OF SOUTH BARRINGTON POLICE PENSION FUND, Defendant-Appellant.

First District (4th Division)   No. 1—92—3221

Opinion filed December 16, 1993.

James P. Bateman, Ltd., of Barrington (George A. Wagner, of counsel), for appellant.

Richard J. Reimer, of Sklodowski, Franklin, Puchalski & Reimer, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

After holding a hearing on plaintiff's application for a line-of-duty disability pension, the Board of Trustees of South Barrington Police Pension Fund (hereinafter the Board) approved a non-duty disability pension for plaintiff, Walter Barber (hereinafter Barber). Barber subsequently sought administrative review of the Board's decision, seeking both a reversal of the decision and the award of prejudgment interest.

The circuit court of Cook County later set aside the Board's decision, finding that Barber was entitled to a line-of-duty disability pension and that the previous decision was against the manifest weight of the evidence. The trial court also awarded Barber prejudgment interest in accordance with section 2 of the Illinois Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6402).

On appeal, the Board contends (1) its denial of Barber's line-of-duty disability pension was not against the manifest weight of the evidence; (2) the trial court abused its discretion in awarding Barber prejudgment interest; and (3) a line-of-duty disability pension pursuant to section 3—114.1 of the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.1) was improperly awarded as Barber's injury was sustained in an act of duty prior to his admission to the pension fund.

We affirm.

The following pertinent facts were adduced at the administrative review hearing. On April 18, 1988, Barber was on duty as a police sergeant for the South Barrington police department. While effecting a traffic stop, a vehicle hit the open door of his squad car from behind and the door was thrown into the left side of his body. Barber was taken by ambulance to Humana Hospital, where his injury was characterized as a "blunt trauma to the left side of the body." He was treated and released.

Two days following the accident, Barber began to experience pain and contacted his personal physician, Dr. Evan Floreani. Dr. Floreani had X rays taken and told Barber that he was suffering from arthritis. He prescribed Tylenol 3 and muscle relaxers. Barber remained off work for a week.

When he returned to work in May 1988, Barber experienced pain in his lower back, legs and hips which seemed to be triggered by cold and rainy weather. He consequently sought treatment for his condition from Dr. Todd Leverentz, who prescribed two drugs which alleviated some of the pain.

In December 1990, Barber was assigned to work traffic detail in addition to his regular shift. This new assignment required that he

stand outside in cold weather for $1^1/2$ hours at a time. In mid-December, after working a traffic detail, Barber again began to experience pain and contacted Dr. Leverentz. The doctor recommended that he undergo X rays at Northwest Community Hospital. The X ray results indicated that Barber was suffering from abnormalities with respect to his cervical spine, right shoulder and lumbar spine.

The next week, Barber attempted to return to work but was in such excruciating pain that he had to take Tylenol 3 and muscle relaxers in order to sleep at night. He informed the chief of police that he was going to take a medical leave of absence because something was "obviously wrong."

On December 28, 1990, Barber filed an application for a line-of-duty disability pension with the Board or alternatively a non-duty disability pension. He also advised the president of South Barrington village that his doctor told him he could no longer perform street duty. Barber requested that he be assigned to a light duty position, and, if such a position was unavailable, asked that he be granted a "non-paid medical leave of absence" until the Board was able to adjudicate his application for disability benefits.

In June 1991, Dr. Robert Alfini diagnosed Barber with "symptomatic degenerative arthritis of the left hip" and performed total hip replacement surgery on him.

The Board held hearings on Barber's application on July 15, and September 9, 1991. The medical reports of various physicians who examined Barber were read into the administrative record.

Dr. Leverentz, who had treated Barber since 1988, stated that he was suffering from "progressively severe musculoskeletal discomfort" which began after the accident in April 1988. He also stated that Barber's symptoms have become increasingly severe over time and that the stiffness of which he complains is "essentially a daily phenomenon" exacerbated by exposure to cold and/or rainy weather.

Dr. William Speers, who examined Barber for the Board, determined that his condition was not directly related to the accident, but that some of his symptoms may have been slightly aggravated by his injury "probably to a value of ten percentage points." Dr. John Dwyer examined Barber and diagnosed him with degenerative arthropathy in both hips and "minimal permanent disability" of the lower back and lower extremities. He ultimately concluded that "[t]he incident of April of 1988 describes an injury that is consistent with the patient's subjective complaints and objective findings." Dr. Dwyer entirely ruled out the possibility, as submitted by the Board, that Barber's condition could have resulted from his judo activities.

Dr. Leon Malachinski, who also examined Barber for the Board,

stated that Barber was disabled due to "progressive hip disease and the avascular necrosis caused by the auto accident he was involved in while on duty in April, 1988." The final doctor, David Spencer, diagnosed Barber with degenerative arthritis of both hips and did not attribute his condition to the accident.

On September 9, 1991, the Board voted to deny Barber's application for a line-of-duty disability pension and instead awarded him a non-duty disability pension. In December 1991, as he had not received a written decision from the Board regarding this matter, Barber filed a complaint for *mandamus* seeking to compel the Board to issue a written decision thus enabling him to seek its administrative review. The Board finally issued a written decision on January 22, 1992, and Barber's complaint was dismissed.

On January 30, 1992, Barber filed for administrative review and, in August of that year, the trial court found that the Board's denial of Barber's line-of-duty pension request was against the manifest weight of the evidence. The trial court also awarded Barber prejudgment interest under the Illinois Interest Act. The Board appeals.

Initially on appeal, the Board asserts that the trial court erroneously determined its denial of Barber's line-of-duty disability pension was against the manifest weight of the evidence. We disagree.

Barber sought a line-of-duty disability pension in accordance with section 3—114.1 of the Illinois Pension Code (hereinafter the Code) (Ill. Rev. Stat. 1989, ch. 108$^1$/$_2$, par. 3—114.1), which states in relevant part:

> "If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension ***. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." (Ill. Rev. Stat. 1989, ch. 108$^1$/$_2$, par. 3—114.1.)

The following facts are undisputed: Barber is a police officer who is disabled for service as a result of an injury. Our only inquiry, then, is whether Barber's disability was incurred while "on duty." The day of the accident, after arresting a motorist for driving while intoxicated, Barber sat in his squad car and proceeded to write up the necessary report. As he wrote the report, a vehicle drove up from behind and knocked the door of the car into his left side, injuring him.

■ We believe effecting a traffic stop constitutes being "on duty" within the ambit of section 3—114.1 of the Code. When Barber suffered his injury, he was in a police squad car performing the duties to which he is assigned and for which he is paid by the village of South Barrington. There is no requirement that Barber be engaged in an inherently dangerous activity involving a special risk. Simply, the injury must have been sustained while "on duty."

The reports of two doctors found Barber to be disabled due to injury to his back and hips and attributed his present condition to the accident. Dr. Leverentz stated that Barber's condition, which he diagnosed as musculoskeletal discomfort, surfaced after the accident. Dr. Malachinski found that Barber was suffering from progressive hip disease and avascular necrosis also caused by the accident. The record is devoid of any evidence indicating a previous injury to Barber's back or hips.

Even if we were to assume that the accident aggravated a preexisting condition suffered by Barber, a different conclusion is not reached. The Code states that the debilitating injury must have been incurred or must have resulted from the performance of an act of duty. There is no requirement that the duty-related incident be the originating or primary cause of the injury, although a sufficient nexus between the injury and the performance of the duty must exist.

The reports of Drs. Dwyer and Speers establish this essential nexus. Dr. Dwyer diagnosed Barber with degenerative arthropathy of the hip which was aggravated by the accident "to a significant degree." Dr. Speers believed Barber suffered from degenerative changes in the neck, lumbo-sacral and hip regions "slightly aggravated by" the accident.

Consequently, even if Barber did suffer from a preexisting condition, he would nevertheless be entitled to a line-of-duty disability pension because the injury occurring on duty was the cause of his inability to work.

"On appeal, a reviewing court will only examine the administrative agency's findings of fact to determine if they are against the manifest weight of the evidence." (*Worth v. Board of Trustees of the Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353.) Although we give the administrative agency's findings of fact great deference, the same is not accorded to its conclusions of law and statutory construction. With respect to these matters, as a reviewing court, we exercise independent review and judgment. (*Worth*, 230 Ill. App. 3d at 353.) Our examination of the evidence presented leads us to conclude the Board's finding, that Barber was not entitled to a line-of-duty pension in accordance with section 3—114.1 of the Code, was against the manifest weight of the evidence.

Next, the Board argues that the trial court abused its discretion in awarding Barber prejudgment interest under section 2 of the Illinois Interest Act (hereinafter the Act). Section 2 provides: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." Ill. Rev. Stat. 1989, ch. 17, par. 6402.

The trial court based its award of prejudgment interest in favor of Barber on *Fenton v. Board of Trustees* (1990), 203 Ill. App. 3d 714. We believe the trial court's reliance on *Fenton* was proper. In *Fenton*, a police officer was involved in an automobile accident in which he sustained debilitating injuries. He filed for disability benefits with the pension board and he was declared ineligible because he was not employed in the Murphysboro police department at the time of his accident. Upon administrative review, the trial court found that the Murphysboro board's decision was against the manifest weight of the evidence and denied the officer's request for prejudgment interest.

Upon further review, this court reversed the trial court's denial of prejudgment interest in favor of the officer, finding a pension agreement to be an "other instrument of writing" under the Act. The court reasoned that because the terms and conditions of the pension fund are written in the Illinois Pension Code, they constitute a writing creating an indebtedness similar to bonds, bills or promissory notes. Based on these findings, the court concluded that prejudgment interest was a proper award under the Act. *Fenton*, 203 Ill. App. 3d at 723.

■ We find, in accordance with *Fenton*, that the trial court's award of the money due Barber under the pension fund agreement was not erroneous.

The Board asserts that it escapes the Act's applicability as the Act does not specifically apply to municipalities. Section 3—103 of the Code defines a municipality as:

"(1) Any city, village or incorporated town of 5,000 or more but less than 500,000 inhabitants, as determined from the United States Government statistics or a census taken at any time by the city, village or unincorporated town and (2) any city, village or unincorporated town of less than 5,000 inhabitants ***." (Ill. Rev. Stat. 1989, ch. 108¹/₂, par. 3—103.)

As the Board is not a city, village or unincorporated town, it does not constitute a municipality as defined by the Code. It is, rather, an administrative agency.

Finally, the Board opines that as Barber's injury was sustained prior to his admission into the pension fund, he was ineligible to

receive a line-of-duty disability pension in keeping with section 3—114.1 of the Code. We cannot agree.

■ Section 3—114.1 contains no language precluding an individual who sustains his debilitating injuries prior to his admission into the pension fund from qualifying for a line-of-duty disability pension. Since the Code fails to prevent Barber's entitlement to such a pension based on the timing of his admission to the fund, we will not do so here.

Moreover, section 5, article XIII, of the Illinois Constitution of 1970 states that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

"Vesting of an employee's rights in this system occurs either at the time the employee entered the system or in 1971, when the Constitution became effective, whichever is later." (*Carr v. Board of Trustees of the Police Pension Fund* (1987), 158 Ill. App. 3d 7, 8.) Thus, upon Barber's admission to the fund, his rights fully vested and became constitutionally protected contractual rights under article XIII, section 5. The fact that Barber's injury was incurred prior to his admission to the Fund does not minimize or obliterate these rights in any way.

The Board now seeks to negate this contractual relationship, alleging that it is within its power to reject Barber's line-of-duty disability pension request because section 3—114.1 cannot be applied retroactively to cover an injury suffered before acceptance into the fund. In view of the above, this position is without merit.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.