ROBERT W. WHITE, Plaintiff-Appellee, v. THE CITY OF AURORA *et al.*, Defendants-Appellants.

Second District   No. 2—00—0890

Opinion filed July 30, 2001.

O'MALLEY, J., dissenting.

Charles H. Atwell, Jr., of Atwell & Atwell, of Aurora, for appellants.

Larry M. Amoni, of Amoni Law Offices, P.C., of Aurora, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The Board of Trustees of the City of Aurora, Illinois, the police pension fund, Kevin Baxter, Daniel Hoffman, Edward Beale, John P. Duggan, and William J. Weigel (collectively, the Board), appeal the trial court's decision reversing the Board's denial of "line of duty" benefits to Robert W. White, after White was injured while stepping out of his squad car to place a traffic citation on the windshield of a car. We reverse.

The following facts are uncontroverted. On November 13, 1997, White, a 56-year-old, 23-year veteran of the Aurora police department, was assigned to patrol the area of the Hollywood Casino in Aurora. All officers were instructed to write more parking citations. As White exited his squad car to place a citation on the windshield of a car illegally parked on a bridge near the casino, he slipped. The accident caused an injury to his back that resulted in a permanent disability.

On January 7, 1999, White applied for a "line of duty" disability pension under section 3—114.1 of the Illinois Pension Code (Pension Code or Code), which provided 65% of an officer's salary. 40 ILCS 5/3—114.1 (West 1996). On August 17, 1999, after a hearing, the Board denied White's application for a "line of duty" pension, leaving him eligible for a "not on duty" pension, which would provide 50% of his salary (40 ILCS 5/3—114.2 (West 1996)).

On September 21, 1999, White filed a complaint for administrative review, adding the City of Aurora as a party-defendant. On November 3, 1999, the trial court dismissed the City of Aurora. After hearing arguments and reviewing the parties' briefs, the trial court reversed the decision of the Board, finding that White was entitled to a "line of duty" pension. The Board filed this timely appeal.

Section 3—114.1 of the Pension Code provides:

"Disability Pension—Line of duty. If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an *act of duty*, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of *65% of the salary* attached to the rank on the police force held by the officer at the date of suspension or retirement. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." (Emphasis added.) 40 ILCS 5/3—114.1 (West 1996).

Initially we must address which standard of review to apply. White asserts that the issue presented is one of law and that the Board's decision must be reviewed *de novo*. Conversely, the Board contends that the issue presented is a mixed question of fact and law and that its decision must be upheld unless it is clearly erroneous. We agree with White.

●1 On administrative review, determinations regarding questions of fact are given deference and will not be disturbed unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Determinations regarding mixed questions of fact and law are not disturbed unless they are clearly erroneous. *Belvidere*, 181 Ill. 2d at 205. Determinations regarding questions of law are reviewed *de novo*. *Belvidere*, 181 Ill. 2d at 205. Interpretation of a statute is a question of law. *Albazzaz v. Department of Professional Regulation*, 314 Ill. App. 3d 97, 105 (2000).

●2 Here, the facts were uncontroverted and the Board was charged only with interpreting the meaning of the term "act of duty" as contained in section 3—114.1 (40 ILCS 5/3—114.1 (West 1996)) and defined in section 5—113 of the Pension Code (40 ILCS 5/5—113 (West 1996)). Because these are purely issues of statutory interpretation, we will apply a *de novo* standard of review.

●3 Section 3—114.1 of the Illinois Pension Code establishes, *inter alia*, the right of a police officer to receive a "line of duty" disability retirement benefit equal to 65% of his salary at the time the disability is allowed where the disability results from injury incurred in "the performance of an act of duty." 40 ILCS 5/3—114.1 (West 1996). In contrast, section 3—114.2 of the Code provides that an officer disabled as the result "of any cause other than the performance of an act of duty" is to receive a disability benefit of 50% of his salary at the time

the disability occurs. 40 ILCS 5/3—114.2 (West 1996). Section 5—113 of the Code defines an "[a]ct of duty," in pertinent part, as follows:

"Any act of police duty *inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life,* imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment \*\*\*." (Emphasis added.) 40 ILCS 5/5—113 (West 1996).

See *Robbins v. Board of Trustees of the Carbondale Police Pension Fund,* 177 Ill. 2d 533, 540 (1997) (court used the definition of "act of duty" contained in section 5—113 to interpret section 3—114.1).

•4 On appeal, White contends that he is entitled to a line of duty disability benefit because he sustained his injuries in the performance of an act of duty as that term is defined in section 5—113. We disagree.

It is well settled that to qualify for line of duty disability benefits it is not enough that a police officer was injured while on duty. *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund,* 172 Ill. App. 3d 273, 276 (1988). Rather, a police officer is entitled to line of duty benefits only if he becomes injured while on duty performing an act involving a special risk not shared by ordinary citizens. 40 ILCS 5/5—113 (West 1996); *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund,* 114 Ill. 2d 518, 522 (1986). For example, in *Morgan,* the Appellate Court, First District, determined that a police officer was not entitled to line of duty benefits after he became disabled while attempting to sit down at a desk to fill out a police report. *Morgan,* 172 Ill. App. 3d at 274. In that case, the chair rolled out from under the police officer and he was injured. *Morgan,* 172 Ill. App. 3d at 274. The court reasoned that filling out police reports did not involve any special risk not ordinarily assumed by ordinary citizens. *Morgan,* 172 Ill. App. 3d at 276-77.

*Morgan* is instructive here. Just as filling out police reports does not involve a special risk, neither does exiting a car to place a traffic ticket on a windshield. Both filling out a report and exiting a car to place a notice or flyer are acts that ordinary citizens assume. Numerous civilian occupations involve filling out citations and placing them where the violator will see them. In fact, White acknowledged that parking regulations are enforced by Aurora employees who are not police officers. Moreover, like the *Morgan* court, we take judicial notice of the fact that, while completing such citations, many civilians exit automobiles. As such, we cannot say that placing a citation on a vehicle inherently involves a special risk not ordinarily assumed by citizens in the ordinary walks of life. *Morgan,* 172 Ill. App. 3d at 276-77.

To support his argument, White cites *Johnson*, 114 Ill. 2d 518; *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814 (1993); and *Wagner v. Board of Trustees of the Police Pension Fund*, 208 Ill. App. 3d 25 (1991). These cases are distinguishable from the case at bar. Unlike the case at bar, the police officer in *Johnson* was performing an act that ordinary citizens are not obligated to perform; he was responding to a citizen in need of assistance. This is an "act of police duty inherently involving special risk" because, "unlike an ordinary citizen, the policeman has no option as to whether to respond" (emphasis omitted) (*Johnson*, 114 Ill. 2d at 522). Unlike the officer in *Johnson*, in this case White exited his car at his own discretion. White chose, at his own discretion, where and when to stop his vehicle and how and when to exit it. It is not the mundane nature of White's act that renders it ineligible for line of duty benefits but the fact that it did not involve any special risk not ordinarily assumed by ordinary citizens. Thus, White's actions were more like those of an ordinary citizen and less like those of the officer in *Johnson* who had to respond to a citizen's need for assistance whenever and wherever he was called. The dissent minimizes these distinctions, but we find them paramount in synthesizing the cases addressing this issue, including *Morgan*, which the dissent seems to invalidate. The dissent focuses on the fact that White was following orders by writing tickets, rather than focusing on the nature of the act. An officer is entitled to line of duty benefits only if he was injured while engaged in an act *"inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life."* (Emphasis added.) 40 ILCS 5/5—113 (West 1996). The dissent never tells the reader how exiting a car to place a citation on a windshield involves a "special risk." We believe that writing a parking ticket and placing it on a windshield without the driver being present is more like the clerical act at issue in *Morgan* than the responsive police action at issue in *Johnson*. Further, unlike the officer in *Johnson*, White in this case was performing an act performed by nonpolice officers, namely, placing a traffic citation on the windshield of a vehicle. Thus, *Johnson* is not dispositive here.

*Barber* and *Wagner* are not dispositive here for the same reason as *Johnson*. Unlike the case at bar, the police officers in *Barber* and *Wagner* were performing police acts involving special risks. *Barber*, 256 Ill. App. 3d at 815 (officer was struck while effecting a traffic stop); *Wagner*, 208 Ill. App. 3d at 26 (officer injured his knee in part while escorting a resisting prisoner up a flight of steps and again while responding to a disturbance). Thus, these cases are not controlling here.

Ignoring the definition of "act of duty" provided in section 5—113

of the Code and *Morgan* (172 Ill. App. 3d at 276), the dissent eliminates the distinction between "act of duty" and "on duty." The dissent's assertion that we draw too fine a distinction is belied by the dissent's failure to draw any distinction between "act of duty" and "on duty." We acknowledge that the Code is to be liberally construed in an officer's favor; however, the dissent's view renders the Code's definition of "act of duty" meaningless and superfluous. "Act of duty" is not synonymous with "on duty." Something more is required. Under the dissent's interpretation of the Code, all officers injured while on duty would qualify for the line of duty benefit. This view is not supported by the Code or case law.

For all of the foregoing reasons, the judgment of the circuit court of Kane County reversing the denial of line of duty disability benefits to White is reversed.

Reversed.

BOWMAN, J., concurs.

JUSTICE O'MALLEY, dissenting:

Given that pension statutes must be liberally construed in favor of the rights of the pensioner (*Johnson*, 114 Ill. 2d at 521), I am unable to distinguish *Johnson* and I would uphold the circuit court's decision reversing the Board's denial of line of duty benefits to plaintiff.

There are two factual differences between this case and *Johnson*. First, as the majority's recitation of facts makes clear, White was acting in response to orders from superiors and in *Johnson* the officer was acting in response to a request from a citizen. Second, the officer in *Johnson* was crossing the street to deal with a traffic accident as opposed to a parking violation. I find these distinctions inadequate to distinguish the rationale of *Johnson*. *Johnson* noted that, while performing their duties, police officers perform many acts that are similar to those involved in civilian occupations. Thus, under *Johnson*, the majority's point that "many civilians exit automobiles" to issue parking citations is not dispositive. 323 Ill. App. 3d at 736. In fact, as to exiting automobiles, *Johnson* said:

> "Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs, and even crossing the street are activities common to many occupations, be it policeman or plumber.
> There can be little question, police officers assigned to duties

that involve protection of the public discharge their responsibilities by performing acts which are similar to those involved in many civilian occupations. The crux is the capacity in which the police officer is acting." *Johnson*, 114 Ill. 2d at 521-22.

The fact that civilians sometimes issue parking citations also is not dispositive. Civilians routinely are employed by police departments to direct traffic (as was the officer in *Johnson*), issue parking and other citations, fill out accident reports, and guard prisoners, to name just a few of the functions performed by both police officers and civilians.

The officer in *Johnson* was assigned to traffic-control duty at a street corner. My conclusion is that if the officer in *Johnson* had slipped while directing traffic, rather than walking across the street to assist a citizen regarding a traffic accident, the supreme court still would have held that the officer was entitled to a line of duty pension. Under the majority's reasoning here, the officer would not be entitled to a line of duty pension if he had been assigned by his employer to direct traffic, because police departments sometimes employ civilians to direct traffic. But he would be entitled to a line of duty pension if he was directing traffic after being alerted to a traffic jam by a citizen.

My reading of *Johnson* is that it held that, even though the officer was only walking across the street in response to a citizen's request regarding a traffic accident, the officer nevertheless "must have his attention and energies directed towards being prepared to deal with any eventuality." *Johnson*, 114 Ill. 2d at 522. I see that observation by *Johnson* regarding the nature of police duties to hold true regardless of whether the officer is engaged in the seemingly mundane task of walking across the street to investigate a traffic accident or getting out of his squad car to enforce the parking laws. Nor should it matter whether the officer is acting pursuant to direction from his supervisor, at the request of a citizen, or on his own initiative. As *Johnson* quoted with approval:

> " 'A policeman is actually engaged in the performance of his duty for the protection of life and property whenever he is carrying out the official orders or requirements of his office. Whether he be patrolling, investigating, or directing traffic, the policeman is the very essence of and should stand as a symbol of the protector of life and property.' (*Blanchard v. New Orleans Police Department* (La. App. 1968), 210 So. 2d 585, 588.)" *Johnson*, 114 Ill. 2d at 523.

The majority asserts that I am focusing "on the fact that White was following orders by writing tickets, rather than focusing on the nature of the act." 323 Ill. App. 3d at 737. That is the same criticism lodged by Justice Ryan in his dissent in *Johnson*. "The majority seems

to tie the 'act of duty' standard to the nature of the work to which the policeman is assigned, and not to the nature of the work in which he was engaged when injured." *Johnson*, 114 Ill. 2d at 524 (Ryan, J., dissenting, joined by Miller, J.). As *Johnson* said, the crux is the capacity in which the officer is acting, and *Johnson* makes clear that we are not to determine that capacity by assessing the dangerousness of the task or the routine nature of the particular physical acts undertaken to perform the task. "We do not find anything in the statute or in its legislative history to support the [pension board's] strained construction that the term 'special risk' only encompasses 'inherently dangerous' activities." *Johnson*, 114 Ill. 2d at 521. As indicated in the quote above, *Johnson* finds that an officer on patrol is acting in his capacity as "protector of life and property." The point I take from *Johnson* is that an officer does not stop patrolling and being on the alert "to deal with any eventuality" when he is enforcing the traffic laws.

Instead of following *Johnson*, the majority follows *Morgan*, 172 Ill. App. 3d 273, and relies on *Morgan* when it contends that I fail to distinguish between "on duty" and "act of duty." *Morgan* based its holding on the fact it was dealing with an officer who slipped out of a chair while inside a police station filling out a report, as distinguished from *Johnson*, which, *Morgan* observed, dealt with the duties of a "traffic patrolman." *Morgan*, 172 Ill. App. 3d at 276. Because *Johnson* failed to mention any "on duty—act of duty" distinction, *Morgan* cited Justice Ryan's dissenting opinion in *Johnson* to explain the distinction. *Morgan*, 172 Ill. App. 3d at 277, citing *Johnson*, 114 Ill. 2d at 525 (Ryan, J., dissenting, joined by Miller, J.). Significantly, despite citing *Morgan*, the majority here ignores the Ryan dissent that *Morgan* relied on with emphasis: "Justice Ryan noted that under the majority opinion 'almost all policemen, *excepting those engaged in clerical duties*, who are injured at work will be entitled to the enhanced pension.' " (Emphasis added by *Morgan*.) *Morgan*, 172 Ill. App. 3d at 277, quoting *Johnson*, 114 Ill. 2d at 525 (Ryan, J., dissenting, joined by Miller, J.). *Morgan* was then confronted with exactly the case—one involving clerical duties—that Ryan said the *Johnson* majority would exclude from receiving an enhanced pension.

Indeed, under the rationale of *Morgan*, the plaintiff here is much more similarly situated to the officer in *Johnson*. They were both out on the street acting as "traffic patrolmen" rather than in a station "performing clerical duties." Thus, contrary to the majority's statement that my views would invalidate *Morgan* and result in enhanced pensions for all officers injured while on duty, I agree with *Morgan* that Justice Ryan's dissent is instructive on the question of the distinction between "act of duty" and "on duty."

My basic problem with the majority is that, in light of the very broad language in *Johnson*, the majority opinion here draws too fine a distinction. It will require pension boards to attempt to determine whether civilians ever, sometimes, or frequently issue parking citations, direct traffic, or fill out traffic accident reports and whether an officer was acting in response to an order from a supervisor, at the request of a citizen, or on his own initiative. In light of the very broad language of *Johnson*, such fine, and, in my view, arbitrary, distinctions are inappropriate. In accordance with the rationale of *Johnson* and the principle that pension statutes are to be construed liberally in favor of the pensioner, pension boards should resolve such fine distinctions in favor of the pensioner.

As *Johnson* said, the crux is the capacity in which the officer is acting. The officer in this case was enforcing the law. Granted, it was a mundane task, but, given what the officer in *Johnson* was doing and the strong language of *Johnson*, I am compelled to dissent.