No. 2--03--1174

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

SCOTT ALM, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 03--MR--716

) 

THE LINCOLNSHIRE POLICE PENSION )

BOARD, ) Honorable

) Raymond J. McKoski,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Scott Alm, appeals from an order of the circuit court of Lake County affirming the decision of defendant, the Lincolnshire Police Pension Board (Board), denying plaintiff's application for line-of-duty disability benefits, and instead awarding him nonduty benefits.  Plaintiff contends that the Board's decision is against the manifest weight of the evidence.  We reverse.  

On June 17, 2000, plaintiff was employed by the Village of Lincolnshire as a sworn police officer and was assigned to the police department's bicycle patrol unit.  Plaintiff's shift was from 11  p.m. to 6:30 a.m.  At the hearing on his application, plaintiff testified that his job on the date in question "was to do premise checks, check buildings in our industrial park, patrol the parking lots of businesses that are open, the downtown area, and then later on in the night head over to the residential area."  The assignment involved riding on a variety of terrain--up on curbs, through grass, and behind buildings. Additionally, plaintiff carried approximately 20 pounds of gear on his person and another 5 to10 pounds in a police bag attached to the back of the bicycle.  As a member of the bicycle patrol unit, plaintiff had performed such duties as making drug arrests, conducting traffic stops, and issuing both parking tickets and tickets for moving violations.  Plaintiff also testified that during bike patrol training he was taught to stay on his bicycle as much as possible because the bicycle gave him a mechanical advantage over people on foot. 

At about 2 a.m. on June 17, 2000, while pedaling his bicycle, plaintiff experienced significant pain in his right knee and noticed swelling.  He had not fallen or had any other sort of accident.  Plaintiff immediately sought treatment and was ultimately diagnosed as suffering from, 
inter alia
, a tear in the medial meniscus of his right knee.  Plaintiff underwent several surgical procedures, but his condition restricted his ability to perform various physical activities, such as running, kneeling, and crawling.  Plaintiff had no prior history of knee problems.  

At the Board's request, plaintiff was examined by two physicians, Dr. David M. Zoellick and Dr. Robert D. McMillan, whose reports were admitted into evidence, along with the reports of other physicians who treated or examined plaintiff.  Dr. Zoellick indicated in his report that it was his impression that plaintiff was injured at work in June 2000.  Dr. McMillan's report states, in pertinent part, as follows:

"As to the proximal [
sic
] proximate cause for the disability, it is unclear to me whether there was any discreet [
sic
] injury or whether this was a cumulative stress injury that may have occurred  relating to his police work.  [Plaintiff] denies significant athletic activity prior to the onset of his disability, and it seems that it was timed to his work, and was well documented as such as outlined in the letter from [plaintiff's attorney].

My speculation as to the evolution of [plaintiff's] problem is that he started with a torn cartilage that failed to improve probably because of the mild varus alignment (bowleg) that he has naturally.  This puts more weight on the inner aspect of the knee."

Dr. McMillan also observed that records from plaintiff's third and fourth operations indicated the presence of an abnormality that had not been mentioned in earlier medical records.  Dr. McMillan noted in his report:

"Not having seen initial MRIs or x-rays, I cannot date this abnormality, but it does point to  the possibility existing of a pre-existing condition, were this present on his initial work up.  This may have contributed to the likelihood of abnormality evolving with his police work.

Nonetheless, it is clear that this man had an active and full physical life prior to the immediate onset of his symptoms and as such, it seems that the police activity certainly was the proximate cause for his abnormality."

In its written decision, the Board found that plaintiff was disabled, but that he had not been injured in the performance of an act of duty.  The Board concluded that the manner in which plaintiff was pedaling his bicycle when his knee began to hurt did not involve any special risk not shared by civilians.  The Board also noted Dr. McMillan's view that plaintiff's condition evolved from a torn cartilage that failed to improve because of plaintiff's mild varus alignment.  Accordingly, the Board awarded plaintiff nonduty benefits.  The trial court affirmed the Board's decision, and this appeal followed.

The findings and conclusions of an administrative agency on questions of fact are deemed 
prima facie
 true and correct and will not be disturbed on review unless they are against the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident.  
Trettenero v. Police Pension Fund
, 333 Ill. App. 3d 792, 801 (2002).  We review the decision of the agency, not the judgment of the trial court.  
Du Page County Board of Review v. Department of Revenue
, 339 Ill. App. 3d 230, 235 (2003).  Determinations regarding questions of law are reviewed  
de
 
novo
.  
White v. City of Aurora
, 323 Ill. App. 3d 733, 735 (2001).  In 
White
, because the facts were uncontroverted and the Board of Trustees of the City of Aurora was charged only with interpreting the meaning of the term "act of duty" found in section 3--114.1 of the Illinois Pension Code (Code) (40 ILCS 5/3--114.1 (West 1998)), we decided that case under a 
de
 
novo
 standard of review
.  
White
, 323 Ill. App. 3d at 735.  Likewise, in the instant case, the facts are undisputed and the only issue before the Board was the meaning of "act of duty."  Accordingly, under 
White
, we review the Board's decision 
de
 
novo
.

At the time plaintiff became disabled, section 3--114.1 of the Code provided, in pertinent part:

"If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement.  A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality."  40 ILCS 5/3--114.1 (West 1998).

The performance of an act of duty need not be the sole cause of the disability, because, as this court has held, "section 3--114.1 does not bar the award of a line-of-duty disability pension based upon the aggravation of a preexisting physical condition."  
Olson v. City of Wheaton Police Pension Board
, 153 Ill. App. 3d 595, 598 (1987); see also 
Kellan v. Board of Trustees of the Firemen's Pension Fund
, 194 Ill. App. 3d 573, 582 (1990).  Under section 3--114.2 of the Code (40 ILCS 5/3--114.2 (West 1998)), a disabled officer is entitled to a pension of 50% of the salary attached to the officer's rank if the disability is the result of any cause other than the performance of an act of duty.

For purposes of these provisions, the definition of "act of duty" set forth in section 5--113 of the Code (40 ILCS 5/5--113 (West 1998)) applies.  See 
Robbins v. Board of Trustees of the Carbondale Police Pension Fund
, 177 Ill. 2d 533, 540-41 (1997).  As pertinent here, section 5--113 defines "act of duty" as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment."  40 ILCS 5/5--113 (West 1998). 

Our supreme court has expressly rejected the notion that the term "special risk" encompasses only inherently dangerous activities.  
Johnson v. Retirement Board of the Policemen's Annuity &  Benefit Fund
, 114 Ill. 2d 518, 521 (1986).  
Johnson
 noted that officers discharging their duties to protect citizens perform many tasks, such as driving automobiles, climbing stairs, and even crossing streets, that are similar to those involved in civilian occupations.  
Johnson
, 114 Ill. 2d at 521-22.
  
Johnson
 teaches that in determining whether an officer is entitled to a line-of-duty benefit, "[t]he crux is the capacity in which the police officer is acting" rather than the precise mechanism of injury.  
Johnson
, 114 Ill. 2d at 522.  As such, an officer performing duties involving special risks will be entitled to line-of-duty benefits even if the immediate cause of injury is an act involving only an ordinary risk.  

In 
Johnson
, a police officer assigned to direct traffic was summoned by a citizen requesting assistance regarding a traffic accident.  While crossing the street to respond, the officer slipped and suffered a disabling injury.  The 
Johnson
 court rejected the argument that the officer was not entitled  to line-of-duty benefits because crossing the street did not involve any special risk:

"The provisions of [the Code] conferring the right to duty-disability benefits do not require  that an officer be injured 
by
 an act of duty.  Rather, the duty disability is awarded when an officer is 'disabled *** as the result of injury incurred *** 
in the performance of an act of duty
.'  (Emphasis added.)  [Citation.] In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance.  In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits.  This is an overly restrictive and unrealistic interpretation.  If this court were to adopt the defendant's narrow reading *** it could discourage police officers from the dedicated and enthusiastic performance of their duties ***."  
Johnson
, 114 Ill. 2d at 522-23.

Similarly, in 
Wagner v. Board of Trustees of the Police Pension Fund
, 208 Ill. App. 3d 25 (1991), an injury that occurred when a rotted plank on a porch gave way was held to be duty-related, where the officer was trying to serve a notice to appear
 at the time his leg fell though the rotted plank.  The court noted that "[w]hile the act of walking across a porch is hardly unique to police officers, serving notices to appear generally is."  
Wagner
, 208 Ill. App. 3d at 29.

On the other hand, a line-of-duty benefit is not available if the disabling condition is job-related stress associated with the general nature of police work or with circumstances such as interpersonal conflicts and concern about job performance, which are common in civilian workplaces.  See, 
e.g.
, 
Robbins
, 177 Ill. 2d at 542.  Nor is a line-of-duty benefit available if the officer is performing a function that civilians commonly perform.  Thus, an officer who became disabled when a chair rolled out from under him as he was filling out a police report at his desk was not entitled to a line-of-duty pension.  
Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 172 Ill. App. 3d 273, 276-77 (1988).  

In 
White
, an officer assigned to patrol duties slipped and suffered a disabling injury when he exited his squad car to issue a parking ticket.  A divided panel of this court held that the officer was not entitled to line-of-duty benefits.  The majority compared an officer issuing a parking ticket to a civilian placing a notice or flyer on a windshield, and also noted that Aurora does, in fact, employ civilians to enforce traffic regulations.  The majority concluded that 
Morgan
 rather than 
Johnson
 was controlling:

"Unlike the case at bar, the police officer in 
Johnson
 was performing an act that ordinary citizens are not obligated to perform; he was responding to a citizen in need of assistance.  This is an 'act of police duty inherently involving special risk' because, 'unlike an ordinary citizen, the policeman has no option as to whether to respond' (emphasis omitted) (
Johnson
, 114 Ill. 2d at 522).  Unlike the officer in 
Johnson
, in this case White exited his car at his own discretion.  White chose, at his own discretion, where and when to stop his vehicle and how and when to exit it.  It is not the mundane nature of White's act that renders it ineligible for line of duty benefits but the fact that it did not involve any special risk not ordinarily assumed by ordinary citizens.  Thus, White's actions were more like those of an ordinary citizen and less like those of the officer in 
Johnson
 who had to respond to a citizen's need for assistance whenever and wherever he was called.  ***  We believe that writing a parking ticket and placing it on a windshield without the driver being present is more like the clerical act at issue in 
Morgan
 than the responsive police action at issue in 
Johnson
.  Further, unlike the officer in 
Johnson
, White in this case was performing an act performed by nonpolice officers, namely, placing a traffic citation on the windshield of a vehicle."  
White
, 323 Ill. App. 3d at 737.

The injury in the case before us is unlike those in the 
Johnson
, 
Morgan
, 
Wagner
, and 
White
, in that it was not the result of any specific, identifiable,  physical trauma.  Rather, the injury may have developed over the course of time.  In his report, Dr. McMillan suggested that plaintiff may have suffered from a cumulative stress injury evolving from a cartilage tear that failed to improve because of a natural misalignment of the knee.  In its written decision, the Board found that Dr. McMillan's theory of the injury was "relevant."  We take this to mean that the Board accepted Dr. McMillan's entire report.  

In its appellate brief, the Board raises the issue of causation.  The Board's brief states, "Dr. Robert McMillan[] indicated in his medical report that it is unclear whether Alm suffered a discreet [
sic
] injury or whether his knee condition evolved over a period of time because of the natural alignment of his knees."  The Board misapprehends Dr. McMillan's report.  Although Dr. McMillan believed that the disability may have evolved from a preexisting condition, he also emphasized "that plaintiff had an active and full physical life prior to the immediate onset of his symptoms and as such, it seems that the police activity 
certainly
 was the proximate cause for his abnormality."  (Emphasis added.)  Thus, Dr. McMillan's report clearly indicates that even if plaintiff's disability could be traced to a preexisting condition, the performance of plaintiff's bicycle patrol duties aggravated the condition to the point that it was disabling.  As noted, line-of-duty benefits are available when the performance of an act of duty aggravates a preexisting injury.  Moreover, the Board's decision notes that the reports of Dr. Zoellick and plaintiff's treating physician, Dr. Eugene P. Lopez, state that plaintiff was disabled as a result of his work as a police officer.  The only police work referenced by the Board's decision is plaintiff's job as a bicycle patrol officer.    

Plaintiff established that he incurred a disabling injury in the course of pedaling his bicycle. The real question, therefore, is whether pedaling the bicycle was an act of duty.  Mindful of the principles discussed above, we conclude that it was.  While on patrol, plaintiff faced risks not ordinarily encountered by civilians.  He was required to ride his bicycle at night over varying terrain, looking after his own personal safety while also remaining vigilant in the performance of his patrol duties.  Plaintiff was also carrying a significant amount of additional weight.  Under these conditions, risks include falls and collisions as well as dangerous encounters with unsavory elements of society.  This particular duty has no clear counterpart in civilian life.  Therefore, we find that the bicycle patrol  performed by plaintiff involved special risk.  Consequently, he was performing in a capacity that amounted to an act of duty such that he was entitled to line of duty benefits.    

The Board misses the point when it argues that plaintiff's act was simply that of riding a bicycle.  The characterization might be apt if one focused narrowly on plaintiff's precise physical act at the moment of the injury.  But in 
Johnson
, it could just as easily have been said that the officer's act was simply walking across the street.  As noted, however, 
Johnson
 makes clear that the proper focus is on the 
capacity
 in which the officer is acting, not the precise act leading to injury.  
Johnson
, 114 Ill. 2d at 522.  As in 
Johnson
, plaintiff was acting in a capacity that involved special risks.  

In its written decision, the Board found it significant that
 plaintiff was not responding to a call for assistance but rather was "riding at his own pace and discretion, choosing what route to take and when and where to stop."  It is true that both 
Johnson
 and 
White
 placed some emphasis on the level of discretion involved in the performance of a particular duty.  
Johnson
 noted that, unlike a private citizen, the injured officer was not at liberty to ignore a citizen's request for assistance.  In contrast, in 
White
, the majority emphasized that the officer had discretion in deciding when, where, and how to stop and exit his vehicle.  However, we believe that both the Board and the court in 
White
 misapprehended the discretion that our supreme court was referring to in 
Johnson
.  The 
Johnson
 court explained that the officer did not have discretion with regard to whether or not he would help the motorist.  
Johnson
, 114 Ill. 2d at 522.  This supported the court's conclusion that the actions performed by the officer were not those of an ordinary citizen because "unlike an ordinary citizen, the policeman has 
no
 option as to whether to respond; it is his duty to respond regardless of the hazard ultimately encountered."  (Emphasis in original.)  
Johnson
, 114 Ill. 2d at 522.   In short, the 
Johnson
 court discussed whether or not the officer had discretion to perform the act, not discretion with respect to the manner in which the precise physical components of the act were performed.  Whether an officer has discretion to perform an act is relevant to determine whether the capacity in which he is acting involves special risk and is, therefore, an act of duty.  However, the discretion involved in performing specific physical activities is not relevant because such discretion does not bear upon the capacity in which the officer is acting.  

Furthermore, we believe that the majority in 
White
 focused on the act performed instead of the capacity in which the officer was acting.  The court in 
White
 focused on the manner in which the officer acted in stopping and exiting his vehicle and the discretion involved in performing these acts.  However, we believe that under 
Johnson
 the proper focus should have been the capacity in which the officer was acting, namely, issuing a parking citation.  Just like the officer in 
Johnson
, the officers in 
White
 and in this case were required to "have [their] attention and energies directed towards being prepared to deal with any eventuality."  
Johnson
, 114 Ill. 2d at 522.  Thus, to the extent that 
White
 focuses on the relevance of an officer's precise physical activities and the discretion involved in performing them, we find its analysis to be at odds with the teachings of 
Johnson
 and we reject it. 

For the foregoing reasons, the judgment of the circuit court of Lake County affirming the Board's denial of line-of-duty benefits is reversed.

Reversed. 

 BYRNE, J., concurs

BOWMAN, J., dissenting:

I respectfully dissent.  In my view, routine police bicycle patrol, without more, does not qualify as a special risk that would entitle plaintiff to line-of-duty disability benefits.  I also disagree with the majority's rejection of this court's previous decision in 
White v. City of Aurora
, 323 Ill. App. 3d 733 (2001).  

As our supreme court stated in 
Johnson v.  Retirement Board of the Policemen's Annuity & Benefit Fund
, 114 Ill. 2d 518, 522 (1986), when determining whether a police officer's activity involves a special risk not ordinarily assumed by a citizen in the ordinary walks of life, "[t]he crux is the capacity in which the police officer is acting."  The majority never squarely addresses the capacity in which plaintiff was acting when he incurred his injury.  Instead, it relies on general risks associated with bicycle riding and possible risks that plaintiff did not actually encounter at the time he was injured.  In my view, none of the risks that the majority identifies, whether real or imagined, elevate plaintiff’s activities at the time of his injury to the level of a special risk.  

The undisputed facts of this case demonstrate that, at the time of his injury, plaintiff encountered only general risks attendant to riding a bicycle.  Contrary to the majority, I am of the opinion that civilian bicyclists regularly deal with varied terrain, sometimes at night, while at the same time observing their surroundings.  Hence, while I am not minimizing the importance of plaintiff’s work, his actions at the time he sustained his injury did not involve a special risk that entitled him to line-of-duty disability.

Additionally, there is no support in the case law for the majority's reliance on hypothetical dangers such as falls, collisions, and encounters with "unsavory" individuals, as a basis for finding a special risk.  Rather, as in 
Johnson
, the focus should be the actual circumstances surrounding plaintiff's injury.  See 
Johnson
, 114 Ill. 2d at 522.  The majority ignores the actual circumstances of this case, contrary to 
Johnson
, and enlarges the scope of an "act of duty" to include any activity that might potentially involve a special risk.  One can easily envision scenarios under which virtually any aspect of a police officer's duties could involve a special risk.  Thus, under the majority’s analysis, officers will be entitled to line-of-duty benefits every time they, while on duty, are injured while riding a bicycle, walking on a sidewalk, or riding in a car, regardless of the capacity in which they are acting at the time of the injury.  Just as the legislature did not intend for the term "special risk" to include only inherently dangerous activities (see 
Johnson
, 114 Ill. 2d at 521-22), I do not believe that it intended for "special risk" to include activities that might carry risk under hypothetical circumstances.  That is why, in order to prevent the definitions of "act of duty" and "special risk" from becoming meaningless, we must look at what actually happened instead of what could have happened.  There was nothing about the actual circumstances of plaintiff's injury that would elevate his activities to an "act of duty."  Even though he was injured while on duty and assigned to the bicycle patrol, he was not acting in a capacity different from that of any civilian bicyclist.

The majority relies on 
Johnson
 in reversing the trial court.  
Johnson
 does not support the majority's position for the reasons stated above and, also, because it is factually distinguishable from the case at bar.   The plaintiff in 
Johnson
 was injured when he fell while crossing the street to assist a citizen who asked for help.  
Johnson
, 114 Ill. 2d at 520.  The court held that Johnson's act of duty "was the act of responding to the call of a citizen for assistance."  
Johnson
, 114 Ill. 2d at 522.  The facts that Johnson was called upon to assist a citizen and that he had no option but to respond were the bases of the court's determination that the plaintiff's actions constituted an "act of duty."  
Johnson
, 114 Ill. 2d at 522.  It is undisputed that plaintiff in the case at bar was not responding to any request for assistance, nor was he responding to any other situation that required his intervention; he was simply riding his bicycle while on patrol.  Thus, the majority's attempts to liken his activities to those of the plaintiff in 
Johnson
 are not persuasive.

Last, I disagree with the majority that this court's decision in 
White
 is at odds with 
Johnson
.  The majority criticizes 
White
 for placing undue emphasis on the precise activities the officer was performing and his discretion in performing them.  The majority acknowledges that consideration of an officer's discretion is appropriate, but believes that 
White
 improperly focused on the officer's discretion in performing specific physical actions rather than on his discretion in performing the act of issuing a parking citation.   The majority's reasons for refuting 
White
 are unpersuasive.  First, police officers generally have discretion when deciding whether to issue a citation.  Thus, the analysis in 
White
 would not have been any different if the court had addressed the officer's discretion in issuing a citation instead of his discretion in exiting his vehicle.  Moreover, the officer's exercise of discretion in exiting his vehicle was not the basis of our decision in 
White
.  
White
 relied on the fact that the activity the officer was performing when he was injured, placing a  citation on a car windshield, is one that civilians routinely perform.  
White
, 323 Ill. App. 3d at 736.  We addressed the officer's discretion only to distinguish 
Johnson
, upon which the officer had relied.  See 
White
, 323 Ill. App. 3d at 737.  Accordingly, the majority’s criticism of 
White
 is unfounded. 

For the foregoing reasons, I would affirm the denial of line-of-duty benefits.
.