April 16, 1999

No. 3--98--0386

(consolidated with No. 3--98--0398)

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

HARRY VIRDEN, )  Appeal from the Circuit Court

)  of the 10th Judicial Circuit

Plaintiff-Appellee,     )  Tazewell County, Illinois

)

v. )

)  

BOARD OF TRUSTEES OF THE ) 

FIREFIGHTERS PENSION FUND )

OF THE CITY OF PEKIN; THE )  No. 97--MR--31

CITY OF PEKIN; and CLIFF   )

BRANDT, JOHN HAMANN, REX   )

HOUGH, CHUCK LAUSS, SUE )

MCMILLEN, BOB REES, DAVE      )

TEBBEN and JOE WEGHORST as    )

members of the Pekin     )

Firefighters Pension Board,   )  Honorable

     )  John A.Barra,

Defendants-Appellants.   )  Presiding Judge

          )

_________________________________________________________________

JUSTICE KOEHLER delivered the opinion of the court:

_________________________________________________________________

This case involves an administrative order of the firemen's pension board of trustees denying the fireman a line-of-duty disability pension.  The Board of Trustees of the Firefighters Pension Fund of the City of Pekin (Board) denied the plaintiff, Harry E. Virden, a line-of-duty disability pension.  The plaintiff appealed under the administrative review law to the circuit court of Tazewell County, which reversed the Board's decision.  The defendants now appeal.  We must decide the following questions: (1) Was the circuit court's application of the "clearly erroneous" standard of review proper? and (2) Was the Board's decision based on an incorrect application of the facts to the law and, therefore, clearly erroneous?  Because we conclude that the circuit court did not err, and that the Board's decision was clearly erroneous, we affirm.

 FACTS

The plaintiff, a 57-year-old male, has been a firefighter for the City of Pekin for 22 years and has worked as a hoseman, a firefighter, and an equipment driver.  In 1996, the plaintiff applied for a line-of-duty disability pension based upon debilitating hypertension and severe anxiety aggravating the hypertension.  The plaintiff claims that his disability arose from three significant experiences during his career.  The plaintiff's first experience occurred in January 1992 while performing a rescue on a woman having breathing difficulties.  He experienced a pounding in his head, profuse sweating, chest pains and a blood pressure reading of 230/140.  He was hospitalized for three days and given a prescription for Procardia, a common blood pressure medication.  The medication was changed sometime afterward to Norvasc and Hytrin.  The plaintiff returned to regular firefighter duty shortly after his release from the hospital.  The record does 
not indicate that this rescue required the plaintiff to engage in strenuous physical exertion.

The plaintiff's next experience occurred in October 1995 while responding to a rescue call that required the plaintiff to carry an obese individual, lying on a gurney, down a flight of twisting stairs.  After the physical exertion, the plaintiff again experienced headache, chest pain and elevated blood pressure.  The Pekin fire chief would not allow the plaintiff to work again until a full cardiac test was conducted and a doctor released him to work.  A cardiac catherization revealed that the plaintiff was not suffering from any coronary artery disease.  He returned to work in late January 1996.

The plaintiff responded to a large house fire in February, 1996, and fought the fire for two hours.  During this time he experienced fatigue, a "pounding headache" and profuse sweating.  After putting out the fire, the plaintiff returned to the fire house.  There the plaintiff had his blood pressure taken and, at the chief's suggestion, was taken to the Pekin Memorial Hospital emergency room.  The doctor administered an EKG and treated the plaintiff with nitroglycerine and Procardia capsules. The plaintiff did not work again until October 1996 when he resumed light duty work.

Dr. James Smalley, a cardiologist, treated the plaintiff from January 1992 until the fall of 1996.  He determined that the plaintiff suffered from hypertension and chest pain syndrome from an unknown cause, possibly hyperanxiety.  Between August 1996 and November 1996, several more doctors examined the plaintiff.  Their findings are as follows:  (1) Dr. Robert Bielinski diagnosed the plaintiff with hypertension, cause unknown, and he considers the plaintiff disabled from firefighting due to his excessive physiological reaction to stress.  In his opinion,  the disability was "aggravated by and precipitated during his occupation."  He noted that the plaintiff's family has a history of hypertension and premature cardiac artery disease.  (2) Dr. Paul Schmidt found evidence of hypertension, but no sign of coronary artery disease.  He also found that the plaintiff's chest pain and elevated blood pressure resulted from hyperanxiety.  (3) Dr. Ron Santschi administered a 24-hour EKG monitoring device.  He found 95% of the 102 readings recorded acceptable.  Dr. Santschi's notes indicated "perfectly normal" results.  (4) Dr. John Noak treated the plaintiff and noted that the plaintiff's hypertension was under control for day-to-day living, but that it was not under control for situations involving moderate to excessive emotional or physical stress, such as firefighting.  (5) Dr. Kabatay, a psychiatrist, determined that the plaintiff suffered from anxiety disorder and an occupational problem which he described as job dissatisfaction.  Dr. Kabatay concluded that the plaintiff suffered from hypertension surges and that his problems were moderate, primarily secondary to anxiety in job-related situations.  

The Board held two hearings to consider the plaintiff's disability pension.  At the second hearing, Dr. Noak, who had been the occupational physician for defendant City of Pekin since August 1995, reviewed his own records and those of the other doctors and testified to the following diagnosis:  (1) no evidence of coronary artery disease; (2) a few episodes of atypical angina; (3) hypertension; (4) hypertension with upward excursions, meaning his blood pressure will shoot higher on occasion; (5) anxiety; and (6) an occupational problem, described as unhappiness with his job.  Dr. Noak concluded his evaluation by stating that the plaintiff has "underlying hypertension *** that has gotten worse [over the years].  When he [the plaintiff] is exposed to an event that he perceives as being stressful, the hypertension gets worse, at times, dangerously so."  Dr. Noak also testified that hypertension and anxiety have strong genetic factors and tend to run in families.

The Board, applying section 4--125 of the Illinois Pension Code (the Code) (40 ILCS 5/4--125 (West 1996)), by unanimous vote concluded the plaintiff was disabled for service in the fire department.  However, in determining whether the disability arose due to an "act of duty" as defined in the firemen's annuity fund article found in section 6--110 of the Code (40 ILCS 5/6--110 (West 1996)), four Board members concluded that the disability resulted from an act of duty, and four Board members concluded that the disability did not.  In light of the tie vote, the board concluded that the plaintiff had not sustained his burden of proving that the disability resulted from an act or acts of duty and denied the pension.  Subsequently, the plaintiff sought administrative review in the Tazewell County circuit court.

The circuit court held that the issue on appeal was a mixed question of law and fact and, therefore, applied a clearly erroneous standard of review.  The circuit court found that the Board clearly erred when applying section 6--110 (40 ILCS 5/6--110 (West 1996)) and found that the evidence overwhelmingly indicated that the plaintiff's disability resulted from specific acts of duty.  Accordingly, the circuit court reversed the Board's finding and issued an order granting the plaintiff a line-of-duty disability pension.  The defendants now appeal.

ANALYSIS

Standard of Review

Did the circuit court apply the proper standard of review when it found the issue on appeal to be a mixed question of fact and law and, accordingly, reviewed the issue under the clearly erroneous standard?  This appeal is a review of an order from an administrative agency and comes to us through the Administrative Review Law (735 ILCS 5/3--110 (West 1996)).  Judicial review of an administrative agency's decision extends to all questions of law and fact.  735 ILCS 5/3--110 (West 1996).

An administrative agency's findings and conclusions of fact are considered 
prima facie
 true and correct.  735 ILCS 5/3--110 (West 1996).  In reviewing an administrative agency's factual findings, we do not reweigh the evidence; therefore, we are limited to determining whether the factual findings are against the manifest weight of the evidence.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 
692 N.E.2d 295, 302 (1998).  However, our review of an administrative agency's determinations on questions of law is 
de novo
.  
City of Belvidere
, 181 Ill. 2d at 205
, 692 N.E.2d at 302.  Where the issue involves the legal effect of a given set of facts, a mixed question of law and facts, we apply the clearly erroneous standard of review.  
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.

In the present case, the Board was required to weigh the evidence and make a factual determination when considering whether the plaintiff was permanently disabled from service in the fire department as a result of the "performance of an act of duty or from the cumulative effects of acts of duty."  40 ILCS 5/4--110 (West 1996).  The Board was also faced with a question of law because, to make its determination, it was required to interpret the meaning of the legal term "resulting from the performance of an act of duty or from the cumulative effects of acts of duty."  40 ILCS 5/4--110 (West 1996).  The Board then was to determine the legal effect of the facts relating to the plaintiff's disability.  Accordingly, we agree with the circuit court that the Board's decision involved a mixed question of fact and law and conclude that 
the circuit court correctly reasoned that the clearly erroneous standard should be applied in its review of the board's decision.

However, in doing so, the circuit court incorrectly applied that part of the definition of "act of duty" applicable to policemen which requires that an act "inherently [involve] special risk, not ordinarily assumed by a citizen in the ordinary walks of life."  40 ILCS 5/5--113 (West 1996).  The policemen's code language is 
different from the Code definition of "act of duty" 
as it relates to firemen (40 ILCS 5/6--110 
(West 1996)).  Accordingly, the plaintiff in this case has the burden of proving that the risk he assumed met the definition of act of duty as it relates to firemen and the board was required to weigh the evidence under that standard.  

Although the circuit court incorrectly applied the 
section 5--

113 definition, that mistake is not determinative in this case.  This court must, nevertheless, interpret and apply the "act of duty" statutory language of section 6--110 to the facts of this case.  The Code definition of "act of duty," as applicable to firemen, is as follows:  "[a]ny act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department, or any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person."  40 ILCS 5/6--110 (West 1996).

The plaintiff claims that three specific acts of duty caused his disability.  The defendants assert that the plaintiff was denied his line-of-duty pension because the disability was a preexisting condition that was not caused by the three specific acts described by the plaintiff.  The defendant further asserts that the plaintiff was genetically predisposed to hypertension as evidenced both by his father dying of a heart attack at an early age and by the plaintiff's brother suffering from hypertension.  Accordingly, the defense argues, the three acts did not cause the disability.

It is well-settled that courts are to liberally construe pension laws in favor of the applicant.  
Kellan v. Board of Trustees of the Firemen's Pension Fund
, 194 Ill. App. 3d 573, 582, 551 N.E.2d 264, 269 (1990).  Additionally, a line-of-duty pension can be awarded if the plaintiff proves that some condition of his employment exacerbated or aggravated a preexisting condition.  
Kellan
, 194 Ill. App. 3d at 582, 551 N.E.2d at 269.  
As noted, in reviewing the Board's findings, we cannot reweigh the evidence.  We do, in this case, examine the legal effect of the facts and conclude that the Board's decision was clearly erroneous.  Although our reasoning may differ from the circuit court's, we agree with the circuit court's conclusion that at least some Board members misapplied the law to the facts of the case.  It is evident from the transcript that Board members were confused about the proper standard that the plaintiff was required to meet.  During deliberations, Board member Tebben stated:

"the real core is the hypertension and anxiety. ***  While the firefighting is stressful, it may aggravate and add to it.  It's not the cause of that underlying.  There may be other cases we heard presented that are not only at least as likely but probably far clearer, and I think 
they have the burden of proof to show if they are demonstrating this.  What has caused the disability is clearly unequivocally and solely that cause coming from the act of -- in order to pass that act of duty, they have to demonstrate that clearly, concisely." 
 And, further, "in my judgment, I don't even see it as necessarily the major cause or predominant cause other factors coming into it, and therefore we lose that act of duty, I think.  
I think that's a tough burden.
"  (Emphasis added.)

During the discussion, Board member Brandt stated:  
"the firemen's pensions must be liberally construed in favor of the applicant.  So if he has got the preexisting condition, these are aggravating it, we have to liberally construe this in favor of the applicant that this is a line-of-duty disability."
  (Emphasis added.)  And, then later, Board member Tebben again stated:  "Where is the act?  Back to the same thing, where is the causal -- the disability -- the disability exists."  Finally, Board member Hough stated:  "I think we are going in circles.  We will be here forever."  Mr. Brandt called for a vote.  Although the record reflects that the Board's attorney provided the Board members with the 6--110 statutory definition of "act of duty" applicable to firemen, the transcript evidences conflicting interpretations in the deliberations as to the standard that the plaintiff was required to meet; there is never a clear enunciation of the law under which the Board was to make its decision.  Because of that omission, at least some members of the Board appear to have made their decision based, wrongly, on a confused conclusion that the plaintiff was required to establish that his disability resulted solely from his performance of firefighting duties.  As we have already stated, a line-of-duty pension can be awarded if the plaintiff proves that some condition of his employment exacerbated a preexisting condition.  In this case, there were three specific acts of duty which resulted in the plaintiff's hospitalization or immediate medical treatment, and the doctors' testimony is clear that firefighting duties aggravated the plaintiff's disability.  Accordingly, we cannot conclude that the Board properly applied the facts to the law.  Because the Board failed to correctly apply the facts to the law, we affirm the circuit court and conclude that the Board's finding was clearly erroneous.

CONCLUSION

In sum, we conclude that the circuit court did not err:  

(1) the clearly erroneous standard applies when reviewing an administrative board's determination on a mixed question of fact and law; and (2) an administrative body's determination is clearly erroneous when it fails to apply the correct standard a plaintiff is required to reach to meet the burden to establish a line of duty disability.  Accordingly, we affirm.  

Affirmed. 

HOLDRIDGE, P.J., and BRESLIN, J., concur.