RAYMOND JENSEN, Plaintiff-Appellee, v. THE EAST DUNDEE FIRE PROTECTION DISTRICT FIREFIGHTERS' PENSION FUND BOARD OF TRUSTEES *et al.*, Defendants-Appellants.

Second District   No. 2—05—0301

Opinion filed November 18, 2005.

John H. Kelly, Ericka J. Thomas, and Peter M. King, all of Ottosen, Trevarthen, Britz, Kelly & Cooper, Ltd., of Wheaton, for appellants.

Andrew Y. Acker, of Kubiesa, Spiroff, Gosselar, Acker & Kern, P.C., of Elmhurst, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

This administrative review action was brought by plaintiff, Raymond Jensen, from the denial of his application for a line-of-duty disability pension by defendants, the East Dundee Fire Protection District Firefighters' Pension Fund Board of Trustees and the East Dundee Fire Protection District Firefighter's Pension Fund (collectively the Board). The trial court reversed the Board's findings as against the manifest weight of the evidence in light of *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595 (2004). The Board contends on appeal that the trial court erred in reversing its decision. We hold that, in determining whether plaintiff was entitled to a line-of-duty pension under section 4—110 of the Illinois Pension Code (Pension Code) (40 ILCS 5/4—110 (West 2004)), the Board applied the wrong standard in considering whether plaintiff's injury was incurred in or resulted from the performance of an act of duty. In considering whether plaintiff's injuries were incurred in or resulted from acts of duty, both the Board and the trial court defined the term "act of duty" as it is applied to police officers under section 5—113 (40 ILCS 5/5—113 (West 2004)), which is not similar to the definition applied to firefighters under section 6—110 (40 ILCS 5/6—110 (West 2004)). The Board and the trial court should have used section 6—110 to define the term "act of duty." Thus, the Board used the wrong standard in weighing the evidence. Because the Board failed to apply the proper standard in weighing the evidence and never addressed the question of whether the activities in which plaintiff was injured constituted acts of duty, we believe that the proper course is to reverse the trial court and remand the cause

with directions for a new hearing before the Board to determine whether plaintiff is entitled to a line-of-duty disability pension.

## FACTS

The facts are undisputed. Plaintiff became a full-time firefighter/paramedic with the East Dundee Fire Protection District on October 1, 1987, and remained employed full-time until July 2003, when he stopped working due to an injury to his left knee. Plaintiff applied for a line-of-duty disability pension under section 4—110, alleging that his disability resulted from acts of duty he performed as a firefighter.

In November 1991, while stepping into an ambulance, plaintiff injured his left knee as he was attending to a medical emergency. As a result of that injury, plaintiff was required to undergo surgery for torn cartilage in his left knee and was unable to return to work until March 1992. On August 15, 1997, plaintiff again injured his left knee while crawling on the floor during a required fire department training drill. He was treated with cortisone therapy and returned to work approximately six weeks later. On May 20, 2002, as he was arriving at a fire call, plaintiff reinjured his left knee when he stepped out of the fire engine and missed a step. The treatment for the injury required a second surgery on the knee, in September 2002. Plaintiff was able to return to work in January 2003. On July 23, 2003, plaintiff reinjured his left knee while on duty when he stepped out of an ambulance after performing required cleaning and maintenance on the ambulance. As a result of that injury, plaintiff underwent treatment including a third surgery and physical therapy. Plaintiff has not returned to work since July 2003.

Plaintiff applied for a line-of-duty disability pension because of his injury to his left knee. The Board ordered that he be examined by three physicians. Each physician who examined plaintiff received from the president of the pension fund, Rainier Gallieano, a letter asking the physician for expertise and help in evaluating plaintiff's knee injury. The letter states that a firefighter is entitled to a line-of-duty disability pension under section 4—110 if "a firefighter, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effect of acts of duty, is found, pursuant to Section 4—112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension ***. A firefighter shall be considered 'on duty' while on any assignment approved by the chief of the fire department, even though away from the municipality he or she serves as a firefighter, if the assignment is

related to the fire protection service of the municipality." 40 ILCS 5/4—110 (West 2004). Also enclosed was a copy of the firefighter/paramedic job description for the physician to review and a form containing the following two questions:

"1. Is the applicant disabled to a point that he is not able to perform his duties as a firefighter pursuant to the job description of the East Dundee Fire District?

2. Is it medically possible that the applicant's injury/illness is a result of or caused by his or her line of duty or service as a firefighter?"

Dr. John A. Elston examined plaintiff and submitted a certificate indicating that plaintiff was disabled and that the disability was caused by his line-of-duty or service as a firefighter. Dr. Lawrence B. Metrick's certificate indicated that plaintiff was disabled and that the disability was caused by plaintiff's line-of-duty or service as a firefighter. Dr. Martin P. Lanoff examined plaintiff and certified that plaintiff was disabled. However, next to the question whether plaintiff's disability was the result of or caused by his line-of-duty or service as a firefighter, Dr. Lanoff wrote, "possibly to a small extent." In his report, Dr. Lanoff indicated that plaintiff's injury to his knee in 1991, requiring surgery, could have contributed to osteoarthritic changes, although it was much more likely that the degenerative changes were simply due to aging and genetics as well as obesity and not to any work-related injuries.

The Board determined that plaintiff's injury did not arise from the performance of an "act of duty" as defined under section 4—110 of the Pension Code. The Board believed that, for purposes of section 4—110, an "act of duty" must "entail a special risk not ordinarily assumed by a citizen in the ordinary walk of life." The Board believed that the circumstances of plaintiff's injuries were similar to those in *White v. City of Aurora*, 323 Ill. App. 3d 733 (2001), wherein we found that a police officer who slipped and was injured while exiting his squad car to place a parking citation on a car windshield was not performing an act of duty, because it did not involve a special risk not ordinarily assumed by a citizen. The Board believed that, like the police officer in *White*, plaintiff's injuries were the result of stepping in and out of vehicles and crawling on the floor, and therefore, plaintiff was acting as an ordinary citizen in those situations. Moreover, because of the "depth" of Dr. Lanoff's report, the Board believed that his finding of only a "small possibility" that plaintiff's injuries were duty-related was the more credible finding. Accordingly, the Board denied plaintiff a line-of-duty disability pension and awarded plaintiff a not-

in-the-line-of-duty disability pension pursuant to section 4—111 of the Pension Code (40 ILCS 5/4—111 (West 2002)).

Plaintiff sought review of the Board's decision in the trial court, arguing that the factual findings were contrary to the manifest weight of the evidence and that the decision was arbitrary and capricious and legally erroneous. Plaintiff argued, *inter alia*, that the Board applied an incorrect meaning of the term "act of duty." Plaintiff also argued, alternatively, that his injuries were the result of the performance of acts involving special risks not ordinarily assumed by a citizen in the ordinary walk of life. Plaintiff asserted that the Board incorrectly relied on *White*, because this court's more recent case of *Alm*, 352 Ill. App. 3d at 602, had criticized and rejected *White* for misapprehending the supreme court's decision in *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986).

*Johnson* expressly rejected the notion that the term "special risk" encompasses only inherently dangerous activities. *Johnson*, 114 Ill. 2d at 521. We observed in *Alm* that *Johnson* teaches that, in determining whether an officer is entitled to line-of-duty benefits, " '[t]he crux is the capacity in which the officer is acting' rather than the precise mechanism of injury." *Alm*, 352 Ill. App. 3d at 599, quoting *Johnson*, 114 Ill. 2d at 522. We concluded that an officer performing duties involving special risks will be entitled to line-of-duty benefits even if the immediate cause of injury is an act involving only an ordinary risk. *Alm*, 352 Ill. App. 3d at 599. We distinguished *White* from *Alm*, in which the injury was not the result of any specific, identifiable, physical trauma but may have developed over the course of time. In *Alm*, the plaintiff established that he incurred a disabling injury in the course of pedaling his bicycle. The question was whether pedaling the bicycle was an act of duty. Mindful of *Johnson*, we concluded that, because he was on patrol, the plaintiff faced risks not ordinarily encountered by civilians. He was required to ride his bicycle at night over varying terrain, looking after his own personal safety while also remaining vigilant in the performance of his patrol duties. The plaintiff also carried a significant amount of additional weight. Under these conditions, the risks included falls and collisions as well as dangerous encounters with unsavory elements of society. We held that this particular duty had no clear counterpart in civilian life and that therefore the bicycle patrol performed by the plaintiff involved special risks amounting to an act of duty such that he was entitled to line-of-duty benefits. *Alm*, 352 Ill. App. 3d at 601.

After briefing and hearing argument, the trial court found that the decision of the Board was against the manifest weight of the

evidence in light of *Alm*. Although the trial court never stated its reasons for relying on *Alm*, the trial court apparently interpreted the term "act of duty" to encompass a firefighter's performance of duties involving special risks even if the immediate cause of an injury is an act involving only an ordinary risk. Defendants timely appeal.

## ANALYSIS

The Board contends that, although plaintiff was disabled, he had not been injured in the performance of an "act of duty" within the meaning of section 4—110 of the Pension Code and, therefore, he was not entitled to a line-of-duty disability pension. In arriving at its decision, the Board interpreted the term "act of duty" to mean "an act inherently involving a special risk not ordinarily assumed by a citizen in the ordinary walk of life," and it applied that meaning to the facts of the case.

■ On appeal, we review the decision of the administrative agency, not that of the trial court. *Stec v. Board of Trustees of the Oak Park Police Pension Fund*, 355 Ill. App. 3d 974, 978-79 (2005). The findings and conclusions of an administrative agency on questions of fact are deemed *prima facie* true and correct and may be set aside only if they are against the manifest weight of the evidence. 735 ILCS 5/3—110 (West 2002); *Daily v. Board of Trustees of the Police Pension Fund*, 251 Ill. App. 3d 119, 122 (1993). Our review of an administrative agency's determinations on questions of law is *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Where the facts are undisputed, our review is generally *de novo*. See *Alm*, 352 Ill. App. 3d at 598 (meaning of "act of duty" requires *de novo* review). However, where, as here, the case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law. Therefore, a "clearly erroneous" standard of review is appropriate to examine the Board's decision. *City of Belvidere*, 181 Ill. 2d at 205. "A decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is ' "left with the definite and firm conviction that a mistake has been committed." ' [Citation.]" *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560 (2004).

■ Section 4—110 of the Pension Code provides in relevant part:

"If a firefighter, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, pursuant to Section 4—112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter shall be

entitled to a disability pension ***. A firefighter shall be considered 'on duty' while on any assignment approved by the chief of the fire department, even though away from the municipality he or she serves as a firefighter, if the assignment is related to the fire protection service of the municipality." 40 ILCS 5/4—110 (West 2004).

Plaintiff contends that the Board improperly applied the definition of "act of duty" found under section 5—113 of the Pension Code, a section that is applicable to police officers, not firefighters. Plaintiff further asserts that, had the Board applied the proper definition of "act of duty" pursuant to section 4—110, a section applicable to firefighters, the Board would have granted plaintiff's application for a line-of-duty disability pension.

■■ ■ We agree with plaintiff that the Board improperly applied the wrong definition of the term "act of duty." "Act of duty" is defined for police officers as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment." 40 ILCS 5/5—113 (West 2004). The Pension Code language relating to police officers under section 5—113 is different from the language defining the term "act of duty" as it relates to *firefighters* under section 6—110 of the Pension Code (40 ILCS 5/6—110 (West 2004)). Section 6—110 of the Pension Code defines an "act of duty" as "[a]ny act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department, or any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person." 40 ILCS 5/6—110 (West 2004).

In interpreting a statute, the court must ascertain the legislature's intent, the best evidence of which is the plain and ordinary meaning of the language used in the statute. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). Where the statutory language is clear, the court will give that language effect without resort to other aids of construction. *Martino v. Police Pension Board*, 331 Ill. App. 3d 975, 980 (2002). It is clear that section 6—110 applies because it defines acts of duty and it relates to firefighters. See *Virden v. Board of Trustees of the Firefighters Pension Fund*, 304 Ill. App. 3d 330, 335 (1999) (applying section 6—110 and not section 5—113 in concluding that firefighter's application for a line-of-duty disability pension should have been granted).

We note that section 6—101 provides that each city of more than 500,000 inhabitants be allowed to create a firefighters' annuity and

benefit fund. 40 ILCS 5/6—101 (West 2004). Section 4—101 grants a similar fund for cities, like East Dundee, of inhabitants under 500,000. 40 ILCS 5/4—101 (West 2004). Contrary to the parties' contentions, merely because the term "act of duty" is found in Article 6 of the Pension Code does not mean that it is applicable only to statutes in Article 6. The terms defined in the Pension Code have the meaning ascribed to them and there is nothing in section 6—110 or any other statute under Article 6 that prohibits a court from ascribing the definition in section 6—110 to section 4—110. Moreover, courts presume that statutes that relate to one subject are intended by the legislature to be consistent and harmonious with each other. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111-12 (1993). The same words used in different sections of a statute should be given a consistent meaning unless legislative intent to the contrary is clearly evident. *Clardy v. Rapistan Division of Lear Siegler, Inc.*, 254 Ill. App. 3d 1066, 1070 (1993). Accordingly, we find that the Board, as well as the trial court, improperly applied the wrong definition of "act of duty" from section 5—113 of the Pension Code to the facts of the case, because plaintiff is a firefighter and not a police officer, and, therefore, the Board applied the wrong standard in weighing the evidence. See *Virden*, 304 Ill. App. 3d at 335.

■ Because the Board applied the wrong definition of the term "act of duty," any case law analyzing questions of specific "acts of duty" as they apply to police line-of-duty disability pensions are not relevant. Thus, the Board's reliance on *White*, as well as the trial court's reliance on *Alm*, was misplaced inasmuch as both resolutions concerned the Pension Code's definition of "act of duty" applicable to police officers and not the standard applicable to firefighters.

Before both the Board and the trial court, the parties focused on whether plaintiff's injuries were incurred in or resulted from "acts of duty," and the Board and the trial court relied on the incorrect standard in weighing the evidence. While plaintiff points out that the Board had before it the East Dundee Fire Protection District's policy and procedures regarding the nature of his work when it considered whether the injuries he suffered were incurred in or resulted from "acts of duty," the Board never reviewed this evidence based on the proper standard. Furthermore, the Board never determined whether the activities in which plaintiff was injured constituted acts of duty for purposes of section 4—110. We review an administrative agency's decision under the "clearly erroneous" standard. *Anderson*, 348 Ill. App. 3d at 560. Consequently, before we review its decision, we believe that the Board should consider whether plaintiff's injury was incurred in

or resulted from the performance of "acts of duty" within the proper meaning of section 4—110. This is particularly appropriate because the Board never addressed the issue of whether the activities in which plaintiff was injured constituted acts of duty as defined by section 6—110 of the Pension Code. See, *e.g.*, *O'Callaghan v. Retirement Board of Firemen's Annuity & Benefit Fund*, 302 Ill. App. 3d 579 (1998) (reviewing board's determination that firefighter candidate drills constituted acts of duty as defined by section 6—110).

The Board argues that its decision to deny the line-of-duty disability pension should be upheld in any event because the Board chose to place greater credibility on Dr. Lanoff's report concerning the causation of plaintiff's injuries. Dr. Lanoff agreed with the other physicians that plaintiff was disabled. However, he agreed with the other physicians as to the cause of the disability, but only to a "small extent." We observe that section 4—112 of the Pension Code (40 ILCS 5/4—112 (West 2004)) requires that a disability pension shall not be paid until disability has been established by the board by examinations of the firefighter by three physicians selected by the board and such other evidence as the board deems necessary. Similar to the certificate provision of section 3—115 (40 ILCS 5/3—115 (West 2002)), which we reviewed in *Wade v. City of North Chicago Police Pension Board*, 359 Ill. App. 3d 224, 231-37 (2005), section 4—112 says nothing about the degree or cause of the applicant's incapacity. While the Board can find Dr. Lanoff's opinion to be more credible, we believe that, because all three physicians determined that plaintiff has a disability preventing him from performing any assigned duties, it is for the Board to determine whether the disability was caused by a covered act, based on all of the evidence presented at the hearing. See *Wade*, 359 Ill. App. 3d at 238. The Board cannot make that determination until it holds a new hearing based on the appropriate standard.

Accordingly, for the preceding reasons, we reverse the judgment of the trial court and remand the cause to the Board for a new hearing as to whether plaintiff is entitled to a line-of-duty disability pension pursuant to section 4—110.

Reversed and remanded with directions.

BOWMAN and GROMETER, JJ., concur.