# Illinois Official Reports

## Appellate Court

---

**Sottos v. Firefighters' Pension Fund, 2017 IL App (3d) 160481**

---

| | |
|---|---|
| Appellate Court Caption | JERRY SOTTOS, Plaintiff-Appellee, v. THE FIREFIGHTERS' PENSION FUND OF THE CITY OF MOLINE, THE BOARD OF TRUSTEES OF THE FIREFIGHTERS' PENSION FUND OF THE CITY OF MOLINE AND ITS MEMBERS, PRESIDENT/TRUSTEE BRIAN VYNCKE, SECRETARY/TRUSTEE MIKE RASCHE, TRUSTEE KATHLEEN CARR, TRUSTEE SCOTT RAES, and THE CITY OF MOLINE, Defendants (The Firefighters' Pension Fund of the City of Moline and the Board of Trustees of the Firefighters' Pension Fund of the City of Moline, Defendants-Appellants). |
| District & No. | Third District<br>Docket No. 3-16-0481 |
| Filed | November 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 14-MR-880; the Hon. Lori R. Lefstein, Judge, presiding. |
| Judgment | Board's amended decision reversed and initial decision reinstated; circuit court's judgment affirmed. |
| Counsel on Appeal | Richard J. Reimer, Evan J. Haim, and Keith A. Karlson, of Reimer, Dobrovolny & Karlson LLC, of Hinsdale, for appellants.<br><br>Thomas W. Duda, of Law Offices of Thomas W. Duda, of Palatine, for appellee. |

JUSTICE CARTER delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice O'Brien concurred in the judgment and opinion.


**OPINION**

¶ 1       Plaintiff, firefighter Jerry Sottos, filed a complaint in the trial court for administrative review of an amended decision of defendant, the Board of Trustees of the Firefighters' Pension Fund of the City of Moline (Board),[1] granting plaintiff monthly line-of-duty disability pension benefits in a certain specified amount. Upon administrative review, the trial court reversed the Board's amended decision and reinstated a prior decision of the Board, which had set plaintiff's monthly benefit amount at a higher level. The Board appeals. We affirm the trial court's judgment, reverse the amended decision of the Board, and reinstate the Board's original decision.

¶ 2                                    FACTS

¶ 3       Plaintiff was a firefighter for the city of Moline (City) for several years, starting in May 2000. At various times over the course of his career, plaintiff injured or reinjured his lower back while working in his capacity as a firefighter for the City. Plaintiff went through various stages of treatment and eventually had two lumbar-fusion surgeries performed—the first in April 2010 and the second in March 2012. In September 2012, plaintiff's neurosurgeon recommended that plaintiff not return to work as a firefighter. Plaintiff later filed for a line-of-duty disability pension.

¶ 4       In July 2014, an administrative hearing was held before the Board on plaintiff's line-of-duty disability pension request. At the hearing, plaintiff testified as to many of the background facts set forth above and numerous documentary exhibits were presented. At the conclusion of the hearing, the Board voted to grant plaintiff line-of-duty disability pension benefits. A written decision to that effect was later entered by the Board. In that decision, the Board found that plaintiff's last date on the payroll of the City was March 7, 2014; that the salary attached to plaintiff's rank on that date was $75,674.93; and that the amount of the monthly disability pension benefit to which plaintiff was entitled was $4099.06 (65% of the monthly salary attached to plaintiff's rank).

¶ 5       The following month, on its own motion, the Board set a hearing date for it to reconsider its previous ruling on plaintiff's application for line-of-duty disability pension benefits. The hearing was held in September 2014. Plaintiff was present for, and participated in, the hearing with his attorney. During the hearing, the City's human resources manager, Alison Fleming, was called to testify by the Board.

---

[1]In the complaint, plaintiff also named the fund itself, the individual trustees of the Board, and the city of Moline as defendants. The parties later agreed, however, to dismiss the individual trustees and the City as defendants in this case. Although the fund itself is still listed as a defendant in this appeal, the Board is the main defendant.

¶ 6        Fleming's testimony can be summarized as follows. Prior to February 27, 2013, plaintiff's annual salary attached to his rank was $72,204. In February 2013, plaintiff received an anniversary increase, which increased plaintiff's annual salary to $73,829.32. Plaintiff received full pay from the City pursuant to the Public Employee Disability Act (Disability Act) (5 ILCS 345/0.01 *et seq.* (West 2012)) through March 8, 2013. Pension contributions were withheld from those payments. After the Disability Act payments ended, plaintiff began receiving temporary total disability (TTD) workers' compensation benefits from the City. The amount of the workers' compensation payment that plaintiff received was based upon his February 2013 salary. In June 2013, plaintiff received a lump-sum payment from the City for accrued sick leave. A pension contribution was withheld from that payment. In May 2013, the City stopped withholding pension fund contributions from payments made to plaintiff. In January 2014, the City instituted a general wage increase for City firefighters, pursuant to the terms of a collective bargaining agreement. Had plaintiff been eligible for that wage increase, his annual salary would have increased to $75,674.93. However, plaintiff did not receive that general wage increase, nor did he make pension contributions based on that increased annual salary. Plaintiff received workers' compensation benefits from the City until a date in February 2014, when plaintiff's workers' compensation settlement contract was approved. In March 2014, plaintiff was paid a lump-sum payment by the City for all of his accumulated vacation and compensatory time. The amount of that lump-sum payment was calculated based upon the new higher salary level of $75,674.93.

¶ 7        During the hearing, following the presentation of evidence, the Board went into closed executive session to discuss the matter. After reconvening, the Board announced its decision. The Board entered an amended written order, which had already been prepared, reducing the amount of plaintiff's monthly line-of-duty disability pension benefit to $3999.09. In the amended decision, the Board found that plaintiff's last day on the City's payroll was March 8, 2013; that plaintiff's salary at the time was $73,829.32; and that any excess pension contributions taken after March 8, 2013, should be refunded to plaintiff. The written ruling did not state, however, why the Board had decided to reconsider and change its prior ruling.

¶ 8        In October 2014, plaintiff filed a complaint in the trial court for administrative review of the Board's amended decision. A hearing was held on the complaint in July 2016. By the time of the hearing, the matter had been fully briefed by the parties in the trial court. After listening to the arguments of the attorneys, the trial court agreed with plaintiff, reversed the Board's amended decision, and reinstated the Board's original decision as to the amount that plaintiff would receive as his monthly line-of-duty disability pension benefit. The Board appealed.

¶ 9                                                          ANALYSIS
¶ 10        On appeal, the Board argues that the trial court erred in administrative review when it reversed the Board's amended decision and reinstated the Board's original decision as to the amount of plaintiff's monthly line-of-duty disability pension benefit. The Board asserts that its amended decision should be upheld because (1) the Board's factual findings—that plaintiff's last day on the City's payroll was March 8, 2013, and that plaintiff's salary at the time was $73,829.32—are entitled to great deference but were ignored by the trial court; (2) the Board correctly determined plaintiff's salary attached to rank as necessary to determine the appropriate amount of plaintiff's monthly disability pension benefit; and (3) pursuant to the Illinois Administrative Code (Administrative Code) (50 Ill. Adm. Code 4402.30, 4402.35,

4402.60 (1996)), nonpayroll compensation, such as workers' compensation payments and lump-sum payments of accrued vacation and compensatory time, are irrelevant for determining salary attached to rank. The Board asks, therefore, that we reverse the trial court's ruling and that we confirm the Board's amended decision.[2]

¶ 11 Plaintiff argues that the trial court's ruling is proper and should be upheld. In support of that argument, plaintiff contends that (1) the Board's amended written order is void because it did not comply with the Open Meetings Act (Act) (5 ILCS 120/2(c)(4) (West 2014)) in that the written order did not set forth any of the determinative reasoning underlying the Board's decision as required by the Act; (2) in the alternative, the Board made no findings of fact, interpretations of any regulations, or conclusions of law to which deference should be given by this court; (3) the clear and unequivocal language of section 4-110 of the Illinois Pension Code (Pension Code) (40 ILCS 5/4-110 (West 2014)) requires that plaintiff's salary attached to rank be determined as of the last day plaintiff was paid by the City, which was in March 2014; (4) the express language of section 4-110 of the Pension Code has not been changed by section 4402.60 of the Administrative Code; (5) to the extent that the Board's interpretation of section 4402.60 of the Administrative Code is accurate, it conflicts with the express provisions of section 4-110 of the Pension Code, would produce an absurd result in this case, and cannot be enforced; (6) the Board's assertions regarding workers' compensation benefits, offsets, and other ancillary matters do not change the express wording of section 4-110 of the Pension Code; and (7) the Illinois Department of Insurance (IDOI) has issued an advisory opinion in May 2016 in a factually similar case indicating that a disabled employee is still considered to be on the municipality's payroll during the time period when the employee receives TTD workers' compensation benefit payments from the municipality. For all of the reasons set forth, plaintiff asks that we affirm the trial court's judgment, reversing the Board's amended decision and reinstating the Board's original decision.

¶ 12 In reply to plaintiff's contentions on appeal, the Board asserts that (1) plaintiff has forfeited his contention regarding the Act because plaintiff failed to object on that basis during the hearing before the Board and failed to file a separate count of his complaint, alleging an Open Meetings Act violation; (2) plaintiff was not paid a "salary" in March 2014 but, rather, was paid a lump-sum payout of accrued vacation and compensatory time, without pension contributions being withheld; (3) section 4402.60 of the Administrative Code does not conflict with section 4-110 of the Pension Code and, instead, provides guidance to pension boards regarding the computation of contributions and benefits; (4) a firefighter, who is receiving workers' compensation benefits, does not remain on a municipality's payroll, although he or she may still be considered to be employed by the municipality; and (5) the Board in this case determined that plaintiff's workers' compensation benefits were not part of the City's payroll and that the workers' compensation benefits could not be used, therefore, to establish the salary attached to plaintiff's rank under section 4-110 of the Pension Code. The Board again asks that we reverse the trial court's ruling and that we uphold the Board's amended decision.

¶ 13 In cases involving administrative review, the appellate court reviews the decision of the administrative agency, not the determination of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). The standard of review that applies on

---

[2]During the oral arguments that were made before this court, the Board also asked, in the alternative, that we remand this case to the Board for further factual findings to be made.

appeal is determined by whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Id.* at 532. As to questions of fact, the agency's decision will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id.* Questions of law, however, are subject to *de novo* review, and mixed questions of fact and law are reviewed under the clearly erroneous standard. *Id.* Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof and will be denied relief if he or she fails to sustain that burden. *Id.* at 532-33.

¶ 14 In the present case, the parties disagree on the appropriate standard of review to be applied in this appeal. The Board asserts that the question before us is a mixed question of fact and law. Thus, the Board contends that the appropriate standard of review in this appeal is the clearly erroneous standard and that the applicable level of discretion should be given to the Board's amended decision. See *id.* at 532; *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142-43 (2006). Plaintiff, on the other hand, argues that there are no disputed questions of fact in this case and that the question before us is purely a question of statutory interpretation. Thus, plaintiff asserts that the appropriate standard of review for this appeal is *de novo*. See *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010). Although we recognize that the case law on this issue is not entirely consistent, we agree with plaintiff that the issue before us is one of statutory interpretation. The appropriate standard of review, therefore, is *de novo*. See *id.* In applying a *de novo* standard of review in this appeal, we are mindful that although the Board's interpretation of the statute is not binding upon us, it is still relevant for us to consider in making our decision. See *Schiller*, 221 Ill. 2d at 142.

¶ 15 The principles of statutory construction are well established. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); 5 ILCS 70/1.01 (West 2014) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* In addition, when a court interprets a pension statute, it is to liberally construe that statute in favor of the applicant, unless to do so would be contrary to the obvious legislative intent of the statute. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552-53 (2009); *Virden v. Board of Trustees of the Firefighters Pension Fund*, 304 Ill. App. 3d 330, 336 (1999).

¶ 16 The statute at issue in this case is section 4-110 of the Pension Code, which addresses line-of-duty disability pension benefits for firefighters. Section 4-110 provides, in pertinent part, that:

"If a firefighter, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found *** to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the

firefighter shall be entitled to a disability pension equal to the greater of (1) 65% of the monthly salary attached to the rank held by him or her in the fire department at the date he or she is removed from the municipality's fire department payroll or (2) the retirement pension that the firefighter would be eligible to receive if he or she retired (but not including any automatic annual increase in that retirement pension)." 40 ILCS 5/4-110 (West 2014).

¶ 17 More specifically, the statutory-interpretation question that we must resolve centers upon the meaning of the language, "at the date he or she is removed from the municipality's fire department payroll" (the payroll clause), contained in section 4-110. To our knowledge, that question is one of first impression. We have found no Illinois cases on that issue, and none have been cited to us by the parties. In addition, the main section of the Administrative Code cited by the Board is of no assistance—that particular section was only intended to define the word "salary" as used in sections 3-125 and 4-124 of the Pension Code (40 ILCS 5/3-125, 4-124 (West 2014)). See 50 Ill. Adm. Code 4402.20 (1998). The question before us in the instant case does not involve either of those two sections of the Pension Code and centers on the definition of the payroll clause referenced above and not the definition of the word "salary." Indeed, despite the Board's assertions on appeal, there is no dispute between the parties as to the amount of the salary on either date, only as to which of the two dates should be chosen—the 2013 date or the 2014 date.

¶ 18 In this particular case, however, when we consider the payroll clause liberally in favor of the plaintiff applicant, as we are required to do under the law, we must conclude that the latter date, 2014, was the date that plaintiff was removed from the City's payroll. See *Roselle Police Pension Board*, 232 Ill. 2d at 552-53; *Virden*, 304 Ill. App. 3d at 336. Our ruling here is supported by the evidence presented to the Board in this case. That evidence showed that plaintiff received TTD workers' compensation benefit payments from the City until a date in February 2014 and that plaintiff also received a lump-sum payout from the City of his accrued vacation and compensatory time in March 2014 at the higher salary level. Our ruling is also consistent with, and further supported by, a May 2016 advisory opinion of the IDOI that TTD workers' compensation benefit payments made to a firefighter by his or her municipal employer constitute being on the municipality's payroll for the purpose of section 4-110 of the Pension Code. Although not binding upon this court, the IDOI's opinion as to the appropriate interpretation of the statute should be given substantial weight, unless the opinion is arbitrary, capricious, or manifestly contrary to the statute in question. See *Roselle Police Pension Board*, 232 Ill. 2d at 559. Our interpretation of the payroll clause of section 4-110 dictates that the latter date, 2014, be used in determining the salary attached to plaintiff's rank. It follows, therefore, that the Board's initial decision was the correct one. Accordingly, we reverse the Board's amended decision, reinstate the Board's initial decision, and affirm the trial court's judgment.

¶ 19 In reaching that conclusion, we note that the Board's assertions in support of using the earlier date are misplaced. The question of whether a certain type of payment constitutes part of the salary attached to a firefighter's rank is a different question than whether the fact that the firefighter received that payment from his municipal employer means that the firefighter was still on the municipality's payroll at that time. By and large, the Board's assertions go to the question of salary and not to the question of whether plaintiff was still on the City's payroll.

¶ 20    Finally, because our interpretation of section 4-110 of the Pension Code completely resolves the issue presented in this case, we need not address further the other assertions and contentions made by the parties in support of their arguments on appeal.

¶ 21                                        CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County, reverse the amended decision of the Board, and reinstate the Board's initial decision.

¶ 23    Board's amended decision reversed and initial decision reinstated; circuit court's judgment affirmed.